UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

United States Courts
Southern District of Texas
FILED

MAY 18 2012

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| Patricia A Alexander | § | |
| David W Alexander | § | |
| | § | |
| Verses | § | CIVIL ACTION NO._____ |
| | § | |
| United States | § | |

## ORIGINAL COMPLAINT

**District Court Jurisdiction**

Patricia A Alexander works and resides in Corpus Christi, TX. David W. Alexander is

Mrs. Alexander husband and is a joint owner of all said properties mentioned in

this suit. Under 26 USC § 7433 makes the United State a party in this law suit.

In an effort for last effort to solve administratively Patricia Alexander sent

certified returned receipt "intent to sue for 2006 tax year" to IRS area director

where tax payer currently resides on October 14th, 2011 with attachments of

evidence supporting our claim. It has been over six months since the intent to sue

letter was sent to area director and no IRS remedy or dispute of claim.

In an effort for last effort to solve administratively Patricia Alexander sent

certified returned receipt "intent to sue for tax year 2005" to IRS area director to

where tax payer currently resides on August 29, 2011 with attachments of evidence supporting our claim. Over Eight months has passed since the intent to sue letter was sent to the area director and no IRS remedy or dispute of claim.

Final determination of tax appeals specialist dated August 22nd, 2011 for 2004 tax year penalty relief provided two years to file in District Court. It has been approximately 9 months.

This court has jurisdiction under 28 U.S.C. § 1346 (a) (1) (c) (e) (f) that erroneous tax claims have been made and erroneous lien placed on our property at 14214 Punta Bonaire, Corpus Christi, TX, 78418. The IRS continues to hold overpaid funds for tax years 2005 and 2006 and lien on property for 2004 and 2006.

2004 tax year the IRS in an appeals hearing for penalty relief denied due process predetermined to find against Mrs. Alexander. 26 U.S.C. § 6320 (b) (3) and the IRS Manual item 34.1.1.6 (08-11-2004) Gives jurisdiction of the District Courts to review the Service's determination reached in due process hearings conducted under sections 6320 and 6330. Due process has also been defined as; Due process properly administered ensures that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him. Id. A purpose of procedural due

process is to convey to the individual a feeling that the government has dealt with him fairly, as well as to minimize the risk of mistaken deprivations of protected interests. Carey v. Piphus, supra @ 262. A pro forma[1] opportunity to be heard will not do. Morgan v. United States, 304 U. S. 1, 18 (1938) (The right to a hearing embraces the right to present evidence.) Absent a full, fair, potentially effective opportunity to defend against the State's charges, the right to a hearing would be "but a barren one." Ibid.; see Mullane v. Central Hanover Bank & Trust Co., 339 U. S. 306, 315 (1950) ("process which is a mere gesture is not due process"). The process afforded must be more than a "sham or a pretense." Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U. S. 123, 164 (1951) The doctrine of administrative construction never has been carried so far as to permit administrative discretion to run riot. Id. @ ¶ 34. Justice must satisfy the appearance of justice. Offutt v. United States, 348 U. S. 11, 14 (1954). Due process preserves both the appearance and reality of fairness; it is supposed to generate the feeling, so important to a popular government, that justice has been done. Marshall v. Jerrico, 1980.SCT.41590 <http://www.versuslaw.com>¶21; 446 U.S. 238 (1980).

---

[1] The term pro forma (Latin "as a matter of form") is a term applied to practices or documents that are done as a pure formality, perfunctory, or seek to satisfy the minimum requirements or to conform to a convention or doctrine. From Wikipedia http://en.wikipedia.org/wiki/Pro_forma

Furthermore we plead to have satisfied the condition in filing suit under 26 USC § 7433 (a)(b) [26 CFR 301.7433-1] under the Federal rules of civil procedure Rule 9c Conditions Precedent. In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity.

In a 5th circuit 2010 case the court ruled in favor of the EEOC that it had complied in general in all conditions precedent with filing a law suit. EEOC, Plaintiff, v. SERVICE TEMPS, INC., d/b/a SMITH PERSONNEL SOLUTIONS, Defendant. Civil Action No. 3:08-CV-1552-D. United States District Court, N.D. Texas, Dallas Division. The EEOC's general allegation that all conditions precedent to filing suit have been fulfilled complies with Rule 9(c), which permits parties to "allege generally that all conditions precedent have occurred or been performed".

**Claims**

1. For tax year 2006 for Patricia Alexander the IRS failed to properly ensure accurate information before sending out erroneous tax collection letter(s) and action(s) beginning December 15th, 2008. The IRS stated that Mrs. Alexander had not filed or paid her taxes for the 2006 tax year. However,

IRS transcripts clearly show that an extension was filed and payment of $41,377 posted on April 15th, 2007 (TC code 460, 673). Additionally, payments were made by Mrs. Alexander for the 2006 tax year prior to April 15th, 2007, which payments totaled $25,800. This results in a total amount paid of $67,177 all on or in advance of the April 15th, 2007 deadline. Prior to October 15th, 2007, Mrs. Alexander filed the 1040, as verified by the IRS posting on October 18th, 2007 and the same date on our USPS returned receipt. In spite of this payment and filing, IRS actions beginning December 15th, 2008, erroneously claimed that Mrs. Alexander had not filed her 1040. Resultantly, the IRS created a 4549 tax return for her showing $165,615 of taxes due. The IRS examiner operation manager violated 26 USC § 7433 and was negligent in checking records thoroughly as prescribed in the IRS manual before initiating actions against Mrs. Alexander, who was in fact current on her 2006 taxes.

Furthermore, Mrs. Alexander's POA (power of attorney) brought this problem to the attention of the IRS on July 8th, 2009. The phone narrative, obtained through the Freedom of Information Act (hereafter FOIA), shows that the agent noted "please adjust Accounts." In spite our bringing this

significant error to the attention of the IRS, and after having been assured

that corrective actions would be taken, no such adjustments were made.

The IRS action and lack of action in this regard amounts to recklessly or

intentionally causing harm in violation of 26 USC § 7433.


After this undue negative attention from the IRS, Mrs. Alexander re-

examined her tax liability for 2006 and Mrs. Alexander filed a 1040X

addendum which posted on the transcript August 18th, 2009. The revised

tax liability on the 2006 1040X is $58,207, well below the $67,177 she had

paid during the 2006 tax year.  Even beyond this, Mrs. Alexander made

additional 2006 payments erroneously demanded by IRS on January 9th,

2009 of $3,835.79 and on July 18th, 2010 in the amount of $3,584.38.

These additional payments brought the total amount paid to the IRS for the

2006 tax year to $74,597.17.  This means that Mrs. Alexander has now paid

$16,390 more than taxes owed. In spite of this clear error, on July 8th, 2010,

the IRS placed a Federal Tax Lien on our property for tax year 2006 with

amount owed of $98,823. This is again in violation of 26 USC § 7433, as the

IRS continued to recklessly or intentionally cause harm to Mrs. Alexander

and our property.

Left with no other remedy for this significant error, on October 14th, 2011 Mrs. Alexander sent a letter to the Area Director stating her intent to sue. The letter of intent to sue requested that the 1040x reflect her actual tax liability, that penalty reversals be made to show her on-time filing, that Mrs. Alexander be provided appropriate refund for over-payment ($16,390), and that a certificate of lien release be issued for my property, including notification of all credit agencies of lien removal. I received a letter from the territory manager making promises to have these issues resolved by March 13th, 2012. To date, however, no corrective or remedial actions have been taken. This inaction, even after making promises to address my requests, the IRS has shown reckless and intentional disregard for our concerns, again violating 26 USC § 7433.

2. On December 1st, 2008, Mrs. Alexander received a refund from the IRS in the amount of $9,899.96 for tax year 2005. The transcript shows a TC 846, which means a refund of over-payment. An audit of the tax record for the year in question is necessary to generate such a refund. However, fifteen days after this refund, Mrs. Alexander received a letter on December 15th, 2008 from an IRS examiner operation manager stating that she had not

filed taxes for tax year 2005. The IRS was negligent, violating 26 USC § 7433, as they failed to properly ensure accurate information before sending out erroneous tax collection letter(s) and action(s) beginning December 15th, 2008, which stated that Mrs. Alexander had not filed or paid her taxes.

Transcripts show that an extension was filed and received April 15th, 2006. Mrs. Alexander's husband died in February 2006. Prior to his death, her husband had fulfilled the financial management of the household, but Mrs. Alexander assumed all financial responsibilities beginning in 2006. Payment for tax year 2005 prior to April 15th, 2006, totaled $12,800. Mrs. Alexander filed her 1040 on-time by mailing October 16th, 2006, which was also the deadline that year for 2005 extensions. Payment in the amount of $67,078 accompanied the 1040, and both posted on the transcript October 23rd. This brought the total payments made for tax year 2005 to $79,878. Tax liability on 1040 was $65,265. Beyond this, there was an additional payment made for 2005 on March 27th, 2007 of $4,000. The total amount paid for tax year 2005, therefore, was $83,878, over $20,000 more than her liability.

The IRS examiner operation manager violated 26 USC § 7433 and was negligent in checking records thoroughly as prescribed in the IRS manual and made erroneous claims that Mrs. Alexander had not filed her 1040. As a result, the IRS created a 4549 tax return for her showing $199,006.04 of taxes due. Mrs. Alexander's POA (power of attorney) brought this problem to the attention of the IRS on July 8th, 2009. The phone narrative obtained through FOIA shows the agents note: "please adjust accounts." Since nothing was done after bringing this problem to the attention of the IRS it appears to be recklessly or intentionally causing harm in violation of 26 USC § 7433.

Mrs. Alexander filed a 1040X addendum to amend original 1040 on August 18th, 2009 showing a tax liability of $53,942 for 2005. Therefore, total payments made ($83,878) minus 2005 tax liability ($53,942) equals $29,936. Further subtracting the original refund the IRS gave us before all this happened ($9,899.96) leaves $20,036.04 in overpaid taxes.

In spite of our bringing this overpayment amount to IRS attention, the IRS sent a letter on March 8th, 2010 in an attempt to close out this year stating

"Amount you owe: None." This was a violation of 26 USC § 7433 to recklessly or intentionally deprive or purposely ignore funds that are owed to Mrs. Alexander. Mrs. Alexander sent a letter to the area Director on August 29th, 2011, stating intent to sue or requesting relief in the form of the following actions: (1) applying the 1040X to reflect true tax liability of $53,942 as agreed in original phone contact in phone narrative of July 8th, 2009; (2) making proper adjustments to reflect on-time payment and reversals of penalties; (3) providing appropriate refund of $20,036.04. We received a letter(s) from the tax advocate claiming that she would resolve the errors. The final letter from the tax advocate was on March 5th, 2012 stating they would be able to resolve Mrs. Alexander's claim by processing the 1040X for 2005 and fix the account. However, the reckless and intentional harm found in 26 USC § 7433 continues: instead of getting the refund due, Mrs. Alexander received a notice from the IRS on March 12th, 2012 with a statement of intent to levy with an amount owed for 2005 taxes of $104.23, which keeps the year open.

3. Mrs. Alexander was denied due process at tax appeals hearing for penalty relief of tax year 2004 where the arbiter was predisposed to find against

her, likely as a result of the still unresolved IRS errors which cast doubt on Mrs. Alexander's honest tax record.  Mrs. Alexander wrote a letter requesting a reasonable cause penalty relief for tax year 2004.  She was unaware that her late husband's cerebral hypertension had caused him to fail to attend to 2004 taxes.  After his subsequent death, she became aware of his failures and took steps to quickly remedy them. However, because of the above-mentioned IRS errors for the 2005 and 2006 tax years, IRS reviewers were pre-disposed to look on her record negatively and find against her.  Further details of the penalty appeal follow:

At that time, her employment required her to reside away from Austin, TX, which is where her husband and children resided and to where all financial mail was delivered. Mrs. Alexander lived and worked in McAllen, TX and only saw her husband and children on most weekends. Her husband's medical condition significantly impaired his cognitive functioning, but both the severity of the condition and the resulting impairment were unapparent at the time.  Mrs. Alexander believed her husband to be carrying out the duties he had long performed, including tax filing and payment.  The appeals tax specialist arbiter's main justification to deny Mrs. Alexander's penalty relief request was to cite an unpublished court

case, which stated that Mrs. Alexander's husband's "capacity must be so severe that the taxpayer cannot function during the period and so sudden that they could not reasonably have planned for it." This quote is verbatim of an unpublished court case [U.S. v Isaak 91-2 USTC 50,314 E.D. ky 1991].

Mrs. Alexander provided the following statement to the arbiter tax appeals specialist request for more information, and it indicates that his condition did indeed incapacitate the cognition and judgment required to perform his financial duties. Her statement also details why she was unable to assess this impairment, such that she believed him to be competent when he was not. The statement reads as follows: "*My husband's incapacity was not such that it was apparent at the time. One's judgment, memory, and acuity can certainly be impaired even without an acute or catastrophic medical event, which you imply is the only condition for reasonable cause. In the case of my late husband, research and experience clearly indicate that severe hypertension does lead to cerebrovascular disease, often causing severe cognitive impairment. This can be transitory, showing symptoms that are more severe at times, while at other times they may be more latent. The degree of impairment is often subclinical, and can only be*

*completely evaluated with professional neuropsycological tests.  In this respect, his disease was akin to many degenerative neurological diseases, such as Alzheimer's disease or dementia: all are disorders which sneak up and rob a person of their full functionality without any single cataclysmic medical event that would indicate the true damage being done. It is therefore not surprising that I had no idea that he was unfit to attend to the financial duties that he had always performed to the best of my knowledge. This sad situation was exacerbated by the fact that we were living apart at the time. Removed from normal daily interactions with him, as well as from our household's mail and financial records, I was justifiably unaware that he was remiss in handling our financial dealings."*

According to an IRS memorandum dated July 28, 1997. From: Chief, Branch No 1 Associate Chief Counsel. To: Chief, Examination Division, Assistant Commissioner where they discuss US v Isaak 1991 and reasonable cause issues it states at the top of memo, *"Field service advice is not binding on examination or appeals and is not a final case determination. Such advice is advisory and does not resolve service position on an issue or provide the basis for closing a specific case."* In the tax specialist arbiter main

determination letter was the very case the IRS chief council warned to not use for determination. This shows that the arbiter failed to provide a venue where disagreements concerning the application of tax law can be resolved on a fair and impartial basis for both the taxpayer and the government [www.irs.gov] and shows a reckless or intentional harm towards tax payer found in 26 USC § 7433 by using an unpublished court case as if it were law and contrary to the IRS counsel recommendations.

Mrs. Alexander provided case law to the tax appeals arbiter with UNITED STATES v. BOYLE, 105 S. Ct. 687, 469 U.S. 241 (U.S. 01/09/1985) where it attempts to draw a bright line. Congress has emphasized, however, that exemptions must be made where a taxpayer demonstrates "reasonable cause." 26 U. S. C. § 6651(a)(1). Accordingly, the IRS already allows dispensations where, for example, a taxpayer or a member of his family has been seriously ill, the taxpayer has been unavoidably absent, or the taxpayer's records have been destroyed. Internal Revenue Manual (CCH) § 4350, (24) para. 22.2(2) (Mar. 20, 1980) (Audit Technique Manual for Estate Tax Examiners). Thus the Government itself has eschewed a bright-line rule and committed itself to necessarily case-by-case decision making. Certainly

Mrs. Alexander's request for penalty relief would be unique in the fact that her husband was ill enough to die from it and that they didn't live together at the time.

An appeals case memo used by the arbiter obtained via FOIA shows that the tax appeal arbiter relied heavily on 2005 tax returns with notes pertaining to the IRS filing a Substitute for Return (SFR) stating the Mrs. Alexander had filed her 2005 return 41 month's late. She cited Mrs. Alexander's supposedly poor record in regard to this tax year as a significant reason for rejecting her plea for penalty abatement.  However, as discussed above, it was the IRS, not Mrs. Alexander, who was mistaken as to the status of her 2005 tax payment.  Sadly, one IRS error led to another, both to the detriment of Mrs. Alexander.  Refer to claim #2 where the IRS examiner operation manager failed to ensure accurate information before sending out erroneous tax collection letter(s) and action(s). Mrs. Alexander provided ample evidence to the tax appeals arbiter that supported on-time payment and showed that the SFR was erroneous. The tax appeals arbiter stated in her final determination that she reviewed the facts Mrs. Alexander sent her and found no basis to change original

determination. According to the tax appeals specialist arbiter who is supposed to be impartial we are to believe that an unpublished case trumps the Supreme Court. After bringing Mrs. Alexander's plight to their attention and providing evidence that previous rulings had been based on incorrect information about her tax history, corrective action was still not taken. This seems nothing short of reckless and intentional and violates 26 USC § 7433 and constitutional rights to due process.

Further regarding this issue:

UNITED STATES v. MERRIAM. UNITED STATES V. ANDERSON., 44 S. Ct. 69, 263 U.S. 179 (U.S. 11/12/1923) www.vurseslaw.com

On behalf of the Government it is urged that taxation is a practical matter and concerns itself with the substance of the thing upon which the tax is imposed rather than with legal forms or expressions. But in statutes levying taxes the literal meaning of the words employed is most important, for such statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful, the doubt must be resolved against the Government and in favor of the taxpayer. Gould v.

Gould, 245 U.S. 151, 153. The rule is stated by Lord Cairns in Partington v. Attorney-General, L.R. 4 H.L. 100, 122:

United Dominion Industries, Inc. v. United States, 532 U.S. 822, 121 S.Ct. 1934, 150 L.Ed.2d 45 (U.S. 06/04/2001) See Leavell v. Blades, 237 Mo. 695, 700-701, 141 S. W. 893, 894 (1911) ("When the tax gatherer puts his finger on the citizen, he must also put his finger on the law permitting it"); United States v. Merriam, 263 U. S. 179, 188 (1923) ("If the words are doubtful, the doubt must be resolved against the Government and in favor of the taxpayer"); Bowers v. New York & Albany Literage Co., 273 U. S. 346, 350 (1927) ("The provision is part of a taxing statute; and such laws are to be interpreted liberally in favor of the taxpayers"). Accord American Net & Twine Co. v. Worthington, 141 U. S. 468, 474 (1891); Benziger v. United States, 192 U. S. 38, 55 (1904).

### Request the court to provide the following relief

1. Award $16,390.00

2006 Tax liability should reflect 1040x at $58,207. Payments have been made

for 2006 taxes of $74,597. Overpaid taxes of $16,390 are due to Mrs. Alexander. Records should be amended to reflect on-time filing and payment.

2. Award $20,036.00

   2005 Tax liability to reflect 1040x at $53,942.00. Payments have been made for 2005 taxes of $83,878.00. IRS refunded $9,899.96 on 12/01/08. Over payment of $20,036.04 is requested. Records to reflect on-time filing and payment.

3. Award $29,231.67

   Penalty and interest relief for tax year 2004 of $29,231.67 as of April 27, 2012.

4. Award $13,852.00

   Requesting attorneys and other relevant fees.

5. Award $100,000.00 or full extent of the law.

   Reckless or Intentional or by reason of negligence for sending failure to file for the year 2005. This caused great hardship and time. IRS negligence cost us our ability to lead a productive, meaningful, peaceful life, and most valuable time away from family and friends.

6. Award $100,000.00 or full extent of the law.

   Reckless or Intentional or by reason of negligence for sending failure to file for the year 2006. This caused great hardship and time. IRS negligence cost us our ability to lead a productive, meaningful, peaceful life, and most valuable time away from family and friends.

7. Award $100,000.00 or full extent of the law.

   Reckless or Intentional harm or by reason of negligence by erroneously placing a lien on our property due to the IRS mishandling of Mrs. Alexander's 2006 tax records. This affected her ability to refinance property and had a serious impact on her credit history. This persistent IRS negligence cost her ability to lead a productive, meaningful, peaceful life, and most valuable time away from family and friends.

8. Award $100,000.00 or full extent of the law.

   Reckless or Intentional or by reason of negligence failure to provide proper due process at tax appeals in using an unpublished court case as law contrary to IRS council. IRS negligence cost us our ability to lead a productive, meaningful, peaceful life, and most valuable time away from family and friends.

9. All liens should be removed from our property and a certificate of release provided. All credit agencies must also be advised to remove notices.

We estimate total relief request of $479,509.67 or full extent of the law.

Plaintiff's address:

14214 Punta Bonaire Dr, Corpus Christi, Texas, 78418

Telephone # 361-877-0054

Signed,

_Patricia A. Alexander_   Date: ___5/18/12___

Patricia A Alexander

_____   Date: ___5/18/12___

David W Alexander

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Patricia A Alexander
David W. Alexander

## DEFENDANTS

United States

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☑ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☑ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
26 USC 7433 and 28 USC 1346

Brief description of cause:
Reckless or Intentional or Negligent to do harm

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $479,509.67

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☑ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____